# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| ELBERT COLEMAN, III,  §<br>ELBERT COLEMAN, IV,  §<br>  §<br>  Plaintiffs,  §<br>  §<br>v.  § Civil Action 1:25-cv-00240-MPB-MG<br>  §<br>NEXO CAPITAL, INC.  §<br>  §<br>  Defendant.  § | |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................3

FACTUAL BACKGROUND ......................................................................................................5

    A.    Plaintiffs' cryptocurrency collateral was properly liquidated pursuant to the Credit Terms ........................................................................................5

    B.    Nexo's expert Dr. Randall Valentine confirms that the liquidations were authorized by contract and that Plaintiffs received notice ..........................10

    C.    Nexo had the contractual right to suspend XRP as a repayment option....11

ARGUMENT ..............................................................................................................................12

I.    THE COURT SHOULD GRANT SUMMARY JUDGMENT AND DISMISS WITH PREJUDICE PLAINTIFFS' BREACH OF CONTRACT CLAIMS ........12

    A.    Plaintiffs admit that the Credit Terms are a binding and enforceable clickwrap agreement, and Plaintiffs ratified the contract by continuing to use Nexo's services ......................................................................................12

    B.    The breach of contract claim based on XRP suspension fails as a matter of law because the contract expressly authorizes Nexo to modify repayment options ........................................................................................................14

    C.    The breach of contract claim based on XRP suspension fails as a matter of undisputed fact ..........................................................................................15

    D.    The breach of contract claim based on lack of notice of liquidation fails as a matter of undisputed fact ............................................................................16

    E.    The breach of contract claim based on improper liquidation fails as a matter of undisputed fact ..............................................................................16

    F.    Statement of material facts not in dispute .................................................17

CONCLUSION ...........................................................................................................................18

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, and Local Rule 56-1, Defendant Nexo Capital Inc. ("Nexo") moves for summary judgment as to the breach of contract claims asserted by Elbert Coleman III ("Coleman III") and his son Elbert Coleman IV ("Coleman IV"). Plaintiffs represent themselves *pro se.* Plaintiffs' breach of contract claims, which are the first cause of action in the operative Second Amended Complaint (Dkt. 10 at 6), are the only claims that the Court allowed to proceed in its IFP screening order (Dkt. 11 at 3-4).

## INTRODUCTION

Nexo is a cryptocurrency platform that, in the past, provided cryptocurrency credit lines to U.S. customers secured by cryptocurrency collateral. Dkt. 104-25 at 2. In this case, Plaintiffs deposited cryptocurrency collateral in exchange for credit lines. Dkt. 104-17 at 10-13. Because the value of their collateral dropped precipitously due to cryptocurrency market crashes in May 2021 (Coleman IV), June 2021 (Coleman III and Coleman IV), and May 2022 (Coleman III) (Dkt. 104-17 at 5, 10-13), Nexo liquidated Plaintiffs' collateral and applied the proceeds to pay off their credit lines, as authorized by Section VI the Nexo Crypto Credit General Terms and Conditions ("Credit Terms"). Dkt. 104-2 at 4; Dkt. 104-3 at 4; Dkt. 104-12 at 4; Dkt. 104-13 at 4; Dkt. 104-14 at 4.

Plaintiffs held XRP—in addition to several other cryptocurrencies—in their Nexo accounts. Dkt. 104-17 at 10-13; Dkt. 104-5 at 13-14; Dkt. 104-7 at 19. On December 22, 2020, the SEC announced it was pursuing an enforcement action against XRP's issuer, Ripple Labs. Dkt. 104-8 at 2. The SEC alleged in that action that XRP was an unregistered security. *Id.* In response to that announcement, Nexo suspended XRP as an accepted cryptocurrency for repayment of its credit lines; however, Nexo's customers could still use U.S. Dollars or a list of other Nexo-accepted cryptocurrencies (such as BTC, ETH, LTC, XLM, BNB, EOS, LINK, and TRX) to pay

3

off credit lines, and they could still add additional collateral including XRP to maintain the required loan-to-value ratio ("LTV"). Dkt. 104-9 at 2; Dkt. 104-10 at 2.

The only claims that the Court has screened and allowed to proceed are the breach of contract claims. Dkt. 11 at 3-4. In its IFP screening order, the Court identified the factual basis of the breach of contract claim as (1) suspension of XRP as a repayment option for credit lines, and (2) lack of notice of liquidation. *Id.* The parties' contract is clear: neither of these arguments is valid. The Credit Terms gave Nexo the right to suspend XRP as a repayment option, and Nexo provided notice of Plaintiffs before the liquidations in 2021 and 2022.

The specific conduct (collateral liquidations) that allegedly caused Plaintiffs' harm is not a breach of contract, and Plaintiffs cannot use the implied covenant to rewrite the Credit Terms to which they agreed. Sections III.3, IV.1, and VIII.2 of the Credit Terms authorized Nexo's suspension of XRP as a repayment option in response to the SEC's enforcement action. Dkt. 104-3 at 3-4; Dkt. 104-12 at 3-5; Dkt. 104-13 at 3-5; Dkt. 104-14 at 3-4. Section III.3 authorized Nexo to suspend XRP payments "[a]t any time" and without notice or liability. *Id.* Sections IV.3 and VI.2 authorized liquidation of Plaintiffs' collateral for failure to maintain the required LTV. Dkt. 104-2 at 3-4; Dkt. 104-3 at 3-4; Dkt. 104-12 at 3-4; Dkt. 104-13 at 3-5; Dkt. 104-14 at 3-4. Plaintiffs might attempt to avoid dismissal of the contract claims by relying on the implied covenant of good faith and fair dealing. However, the law is clear that the implied covenant cannot be used to contradict the express terms of the contract, or to rewrite a contract to add substantive terms that do not exist.

The allegation of breach based on XRP suspension fails as a matter of law for the reasons above, and it also fails as a matter of undisputed fact. As to Coleman III, he admits that he did not take out his first credit line until February 2021—nearly two months *after* Nexo suspended XRP

4

as a repayment option and provided notice of such suspension to its customers. Dkt. 104-18 at 3, 17; Dkt. 104-9 at 2; Dkt. 104-5 at 3. Plaintiffs also had multiple other cryptocurrency assets in their accounts to pay off or pay down their credit lines during Spring 2021; they simply chose not to use the cryptocurrency assets in their Nexo accounts to avoid the losses they now claim. Dkt. 104-5 at 13-14; Dkt. 104-7 at 19; Dkt. 104-22 at 81, 119 (Coleman III Dep. Tr. 81:19-22, 119:19-22). As for the breach of contract claim for "liquidating Plaintiffs' holdings without notice," the undisputed evidence shows that both Plaintiffs received multiple text and email alerts before their liquidations. Dkt. 104-25 at 8-12; Dkt. 104-16 at 2-13; Dkt. 104-19 at 17.

## FACTUAL BACKGROUND

### A. Plaintiffs' cryptocurrency collateral was properly liquidated pursuant to the Credit Terms

Nexo Capital Inc. is the corporate entity that provided cryptocurrency services to Plaintiffs. Dkt. 104-25 at 2. Nexo Capital Inc. operated the nexo.com, formerly nexo.io, website, at the time of the liquidations of Plaintiffs' cryptocurrency collateral in 2021 and 2022. *Id.*

Nexo Capital Inc. offered two different products through its website relevant to this lawsuit—the Credit Line Product ("CLP") and the Earn Interest Product ("EIP"). Dkt. 104-25 at 2. The CLP offered cryptocurrency credit lines to Nexo's customers that were secured by the cryptocurrency collateral in their Nexo accounts. *Id.* at 2-3. The EIP offered cryptocurrency "interest" to Nexo's customers that was paid on unencumbered cryptocurrency deposits in their Nexo accounts. *Id.* at 3.

Coleman III first opened his Nexo account on May 31, 2020 through an online sign-up process on Nexo's website. Dkt. 104-25 at 3; Dkt. 104-4 at 3. Coleman IV first opened his Nexo account on August 8, 2020 in the same manner. Dkt. 104-25 at 3; Dkt. 104-6 at 3. When Plaintiffs signed up for their Nexo accounts in May and August 2020, they were directed to click on a "Create

5

Account" button. Dkt. 104-25 at 3; Dkt. 104-1 at 2. Plaintiffs could not create an account without clicking the "Sign Up" button and acknowledging: "By Signing up you agree with our T&C and Privacy Policy." Dkt. 104-25 at 5. This T&C consent was conspicuously displayed immediately below the "Sign Up" button, and it used the terminology "you agree." *Id.*



Dkt. 104-25 at 5; Dkt. 104-1 at 2. The "T&C " reference under the "Sign Up" button was hyperlinked to the terms and conditions available for viewing on Nexo's public website, including the Credit Terms. Dkt. 104-25 at 6. The Credit Terms govern Nexo's CLP. *Id.* By clicking the "Sign Up" button, Plaintiffs agreed to the Credit Terms. *Id.*

After opening his account, Coleman IV first deposited cryptocurrency into his Nexo account on September 28, 2020. Dkt. 104-25 at 6. Coleman IV took out his first credit line from Nexo on October 9, 2020. *Id.* Coleman III did not deposit any cryptocurrency into his Nexo account between May 31, 2020 and February 9, 2021. *Id.*; Dkt. 104-5 at 2.

On December 22, 2020, the SEC filed an enforcement action against Ripple claiming that XRP was an unregistered security ("SEC Action"). Dkt. 104-25 at 6-7; Dkt. 104-8 at 2. Nexo suspended XRP as a repayment option for credit lines in response to the SEC Action, but Nexo still allowed customers to "top up" (*i.e.*, add to) and withdrawal XRP from their accounts. *Id.* at 7. On December 29, 2020, Nexo updated its website to disclose that it would not accept XRP as a repayment option for its credit lines. Dkt. 104-9 at 2. After December 29, 2020, U.S. Dollars and at least 9 cryptocurrency options besides XRP remained available for repayment of Nexo's credit lines. *Id.* On April 5, 2021, Nexo posted a blog post on its website describing its past suspension of XRP for credit line repayments, and explaining that XRP withdrawals and top-ups remained

available. Dkt. 104-10 at 2.

Coleman III first deposited cryptocurrency into his Nexo account on February 10, 2021. Dkt. 104-25 at 7. Coleman III first deposited XRP in his Nexo account on February 11, 2021. *Id.* Coleman III's first deposit of XRP on the Nexo platform on February 11, 2021 was after Nexo had already suspended XRP as a repayment option for its credit lines. *Id.* Coleman III took out his first credit line from Nexo on February 11, 2021, after Nexo has already suspended XRP as a repayment option for its credit lines. *Id.*

The Credit Terms provided that the cryptocurrency collateral in a customer's Nexo account could be automatically liquidated, or sold, if the customer failed to maintain the required Loan-to-Value ("LTV") ratio, which is the ratio of the balance of the credit line to the current market value of the cryptocurrency assets used as collateral, expressed as a percentage. Dkt. 104-25 at 7; Dkt. 104-2 at 4; Dkt. 104-3 at 4; Dkt. 104-12 at 4; Dkt. 104-13 at 4; Dkt. 104-14 at 4; Dkt. 104-11 at 2. At all relevant times, the LTV ratio triggering automatic liquidations was set by Nexo at 83.3% Dkt. 104-11 at 2. Partial automatic liquidations would start to occur once the credit line balance exceeded 83.3% of current market value of the cryptocurrency collateral. Dkt. 104-25 at 7-8. The proceeds from such forced liquidations were applied to pay off the outstanding credit lines. *Id.* Liquidations were governed by the Credit Terms and performed by automated processes based on the market value of the cryptocurrency collateral at the time of the liquidations. *Id.*

Prior to his first liquidation in June 2021, Coleman III took out credit lines in the principal amount of approximately $89,000. Dkt. 104-17 at 12. The first liquidation generated proceeds of approximately $79,000 that was applied to pay his outstanding credit lines. *Id.* While XRP was one of his collateral assets, Coleman III also held substantial amounts of XLM, ETH, BCH, USDC, and EOS. *Id.* Coleman III admitted that he used some of the proceeds of his credit lines to purchase

both crypto and non-crypto items, that he withdrew some of the proceeds of his credit line from the Nexo platform, and that some portion of the liquidated collateral was purchased with his credit lines. Dkt. 104-18 at 4, 17.

The first liquidation of Coleman III's collateral occurred on June 21 and June 22, 2021. Dkt. 104-25 at 8; Dkt. 104-5 at 13-14. The first liquidation of Coleman III's collateral was authorized by the Credit Terms because he breached the LTV ratio of 83.3% Dkt. 104-25 at 8; Dkt. 104-17 at 9. Before his first liquidation, Coleman III had substantial cryptocurrency assets other than XRP in his Nexo account that were available to repay his credit lines. *Id.* at 12.

Coleman III received SMS text message notifications before the first liquidation of his collateral on June 21 and June 22, 2021. Dkt. 104-25 at 8; Dkt. 104-16 at 2-13. Nexo maintains SMS text logs of liquidation warnings. Dkt. 104-25 at 8. Nexo's SMS text logs sent to Coleman III before the first liquidation of his collateral on June 21 and June 22, 2021 show that he received multiple text notices before his first liquidations. Dkt. 104-16 at 2-13. Nexo's computer systems were also programmed to send automated email warnings before liquidations, so Coleman III should have received such emails before his first liquidation. Dkt. 104-25 at 9-10.

The second liquidation of Coleman III's collateral occurred between May 8 and May 12, 2022. Dkt. 104-25 at 10; Dkt. 104-5 at 21-22. The second liquidation of Coleman III's collateral was authorized by the Credit Terms because he breached the LTV ratio of 83.3% Dkt. 104-25 at 10; Dkt. 104-17 at 9. Coleman III received SMS text message notifications before the second liquidation of his collateral between May 8 and May 12, 2022. Dkt. 104-16 at 2-13. Nexo's SMS text logs sent to Coleman III before the second liquidation of his collateral between May 8 and May 12, 2022 show that he received multiple text notices before his second liquidations. Dkt. 104-25 at 10-11. Nexo's computer systems were programmed to send automated email warnings before

8

liquidations, so Coleman III should also have received such emails before his second liquidation between May 8 and May 12, 2022. *Id.* at 12.

XRP only accounted for approximately $28,000 in liquidation proceeds across both Coleman III liquidations totaling about $96,000. Dkt. 104-17 at 12-13; Dkt. 104-5 at 13-14, 21-22. Nexo did not involuntarily liquidate Coleman III's cryptocurrency assets after May 12, 2022. Dkt. 104-25 at 12. Coleman III's losses were caused by the liquidation of his cryptocurrency collateral in connection with Nexo's CLP. *Id.* Ebert Coleman III's losses were not caused by Nexo's EIP. *Id.* Coleman III's Nexo account was credited with all the cryptocurrency interest to which he was entitled pursuant to Nexo's EIP. *Id.*

Prior to his first liquidation in May 2021, Coleman IV took out credit lines in the principal amount of approximately $105,000. Dkt. 104-17 at 14. The first liquidation in May 2021 generated proceeds of approximately $53,000, and the second liquidation in June 2021 generated proceeds of approximately $42,000, and the combined total of approximately $95,000 was applied to pay his outstanding credit lines. *Id.* While XRP was one of his collateral assets, he also held substantial amounts of ETH, BTC, TRX, PAXG, BNB, PAX, WLM, EOS, BCH, LINK, LTC, and USDC. *Id.* at 12-13. Coleman IV admitted that he used some of the proceeds of his credit lines to purchase both crypto and non-crypto items, that he withdrew some of the proceeds of his credit line from the Nexo platform, and that some portion of the liquidated collateral was purchased with his credit lines. Dkt. 104-19 at 17.

The first liquidation of Coleman IV's collateral occurred on May 23, 2021. Dkt. 104-25 at 12. The first liquidation of Coleman IV's collateral was authorized by the Credit Terms because he breached the LTV ratio of 83.3% Dkt. 104-25 at 12; Dkt. 104-17 at 9. Before his first liquidation, Coleman IV had cryptocurrency assets other than XRP in his Nexo account that were

available to repay his credit lines. Dkt. 104-17 at 14. Coleman IV admits in his responses to requests for admission that he received at least one notification before his first liquidation. Dkt. 104-19 at 17. Nexo's computer systems were programmed to send automated email warnings before liquidations, so Coleman IV should also have received such emails before his first liquidation. Dkt. 104-25 at 12.

The second liquidation of Coleman IV's collateral occurred between June 21 and June 22, 2021. Dkt. 104-25 at 12; Dkt. 104-7 at 20. The second liquidation of Coleman IV's collateral was authorized by the Credit Terms because he breached the LTV ratio of 83.3% Dkt. 104-25 at 13; Dkt. 104-17 at 11. Coleman IV admits in his responses to requests for admission that he received at least one notification before his second liquidation. Dkt. 104-19 at 17. Nexo's computer systems were programmed to send automated email warnings before liquidations, so Coleman IV should also have received such emails before his second liquidation. Dkt. 104-25 at 13.

XRP only accounted for approximately $19,000 in liquidation proceeds across both Coleman IV liquidations totaling about $96,000. Dkt. 104-17 at 12-13; Dkt. 104-7 at 19-20. Nexo did not involuntarily liquidate Coleman IV's cryptocurrency assets after June 22, 2021. Dkt. 104-25 at 13. Coleman IV's losses were caused by the liquidation of his cryptocurrency collateral in connection with Nexo's CLP. *Id.* Coleman IV's losses were not caused by Nexo's EIP. *Id.* Coleman IV's Nexo account was credited with all the cryptocurrency interest to which he was entitled pursuant to Nexo's EIP. *Id.*

> **B.    Nexo's expert Dr. Randall Valentine confirms that the liquidations were authorized by contract and that Plaintiffs received notice**

Nexo has retained Dr. Randall Valentine as an expert witness in this matter. Dkt. 105 at 2. He holds a Ph.D. in Finance from Mississippi State University, and he is currently an Associate Professor of Finance at Millsaps College. *Id.* He has academic and professional experience of over

10

25 years, including published research, financial analysis, financial technology, investment strategy, artificial intelligence, and quantitative analysis. *Id.* He has been retained as an expert witness in over 100 matters, with a significant number of these involving cryptocurrency and financial damages. *Id.*

Dr. Valentine prepared an expert report in this matter on behalf of NexoInc., dated November 5, 2025. Dkt. 104-17. His qualifications and experience are detailed in his *curriculum vitae*, which is attached as Appendix A of the report. *Id.* at 18. Dr. Valentine's affidavit reaffirms the analysis, content, and conclusions of his Expert Report in support of Nexo's motion for summary judgment. Dkt. 105 at 3.

In that expert report, Dr. Valentine concludes, among other things, that Nexo is not liable for breach of contract, that Plaintiffs breached the required LTV ratio of 83.3% during the cryptocurrency market crashes in 2021 and 2022, and their collateral was properly liquidated pursuant to the Credit Terms, and that there was no breach for lack of notice because Nexo has produced SMS text message logs showing that it provided notice to Coleman III prior to all liquidations at issue, and Coleman IV admits to receiving notice. Dkt. 104-17 at 3, 5, 7-9.

  **C.** **Nexo had the contractual right to suspend XRP as a repayment option**

The Credit Terms provided Nexo will authority to suspend XRP as a repayment option for its credit lines based on the SEC's action against Ripple:

- Nexo had the right to modify the "Digital Assets" (defined to include cryptocurrencies) accepted on its platform. Credit Terms IV.1. Dkt. 104-2 at 3; Dkt. 104-3 at 3; Dkt. 104-12 at 3; Dkt. 104-13 at 3; Dkt. 104-14 at 3.

11

- Nexo had the right to modify or remove certain features or components of the credit line service "[a]t any time." Credit Terms III.3. Dkt. 104-2 at 3; Dkt. 104-3 at 3; Dkt. 104-12 at 3; Dkt. 104-13 at 3; Dkt. 104-14 at 3.

- Nexo had the right to apply new rules to repayments of credit lines. Credit Terms VIII.2. Dkt. 104-3 at 4; Dkt. 104-12 at 4; Dkt. 104-13 at 4; Dkt. 104-14 at 4.

## ARGUMENT

Nexo is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and that Nexo is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

### I. THE COURT SHOULD GRANT SUMMARY JUDGMENT AND DISMISS WITH PREJUDICE PLAINTIFFS' BREACH OF CONTRACT CLAIMS

**A. Plaintiffs admit that the Credit Terms are a binding and enforceable clickwrap agreement, and Plaintiffs ratified the contract by continuing to use Nexo's services**

By alleging breach of contract, Plaintiffs necessarily admit that they are bound by it. Dkt. 10 at 6 (pleading breach of the "Borrow Terms and Conditions"). Indeed, the existence of a contract—here, the Credit Terms—is an "essential element" of Plaintiffs' breach of contract claims. *Berg v. Berg*, 170 N.E.3d 224, 231 (Ind. 2021) (quoting *Fowler v. Campbell*, 612 N.E.2d 596, 600 (Ind. Ct. App. 1993)). Nexo is moving for summary judgment because Plaintiffs cannot establish a different element—breach. *See id.*

Nexo agrees that a contract exists—the Credit Terms. When they opened their Nexo accounts, Plaintiffs clicked a "Sign Up" button acknowledging: "By Signing up you agree with our T&C and Privacy Policy." Dkt. 104-25 at 5. This language was conspicuously displayed immediately below the "Sign Up" button, and it used the terminology "you agree." *Id.* at 5. The T&C and Privacy Policy terms in the consent language hyperlinked to those documents on Nexo's website, including the Credit Terms. *Id.*

12

Plaintiffs' act of clicking the "Sign Up" button constitutes a binding agreement to the Credit Terms. Indiana courts find clickwrap agreements to be enforceable. *Adsit Co. v. Gustin*, 874 N.E.2d 1018, 1023 (Ind. Ct. App. 2007) (finding enforceable a clickwrap forum selection clause); *Jallali v. Nat'l Bd. of Osteopathic Med. Examiners, Inc.*, 908 N.E.2d 1168, 1173 (Ind. Ct. App. 2009) (same); *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016) (explaining "[t]here is nothing automatically offensive about [clickwrap] agreements" and collecting cases upholding them); s*ee also Rojas v. GoSmith, Inc.*, No. 2:17-CV-281-JVB-JEM, 2020 U.S. Dist. LEXIS 28922, 2020 WL 831585, at *3 (N.D. Ind. Feb. 20, 2020) (explaining Indiana law on clickwrap agreements). In Indiana, "[t]he primary focus when deciding whether a clickwrap agreement is enforceable is whether the party clicking it had reasonable notice of and manifested assent to the agreement." *Jallali*, 908 N.E.2d at 1173 (citing *Adsit*, 874 N.E.2d at 1023). Reasonable notice and manifested assent are determined by an objective inquiry. *Zimmerman v. McColley*, 826 N.E.2d 71, 77 (Ind. Ct. App. 2005); *Ellison v. Town of Yorktown*, 47 N.E.3d 610, 619 (Ind. Ct. App. 2015).

Here, reasonable notice and manifestation of assent are beyond doubt satisfied given the express "you agree" language in the Nexo sign-up flow. *See Merchs. Bank v. Curby*, No. 1:21-cv-02669-JRS-MG, 2022 U.S. Dist. LEXIS 200296, at *6 (S.D. Ind. Nov. 3, 2022) (granting summary judgment on the issue of whether the customer made a contract when she opened a bank account online). In addition to being bound by the Credit Terms based on clickwrap authority, Plaintiffs are also bound because they ratified the contract by continuing to use Nexo's services and take out credit lines over a lengthy period of time. *Id.* at *7 (finding ratification as well). While Nexo admits to the existence of the contract, the black-letter-text and plain language of the Credit Terms establishes no breach.

13

### B. The breach of contract claim based on XRP suspension fails as a matter of law because the contract expressly authorizes Nexo to modify repayment options

Plaintiffs allege that Nexo committed breaches of contract by suspending XRP as a repayment option. They fail to state a claim. There is nothing in the Credit Terms precluding Nexo from suspending XRP—indeed, the Credit Terms express authorize Nexo to do so. *See* Dkt. 104-2 at 3; Dkt. 104-3 at 3 (Credit Terms III.3) ("At any time, at our sole and absolute discretion, without liability to you, we can . . . suspend the provision of the Nexo Crypto Credit or of all or part of the other Nexo services"). Under this provision, Nexo can suspend all parts of the Nexo services it provides on its platform. Likewise, Nexo can alter the Digital Assets, which includes cryptocurrency, offered on its platform. *See id.* (Credit Terms IV.1) ("All such Digital Assets are indicated on the Nexo Platform and in the Nexo Account and are subject to revision from time to time."). Similarly, in the Credit Terms, Nexo reserved the right to regulate repayment options. *See* Dkt. 104-3 at 4 (Credit Terms VIII.2) ("Certain rules may apply to repayments from time to time, as indicated on the Nexo Platform."). Suspending XRP as a repayment option does not violate a single provision in the Credit Terms; instead, the contract expressly authorizes Nexo to remove one of many cryptocurrency repayment options from its accepted list. Plaintiffs do not plead that XRP was specifically listed as an accepted repayment option in the Credit Terms, and nothing in the Credit Terms bound Nexo to perpetually accept XRP as a repayment option. Nor is there any provision of the Credit Terms requiring Nexo to give Plaintiffs notice of the suspension. To the contrary, Credit Terms III.3 provides that Nexo can suspend XRP "[a]t any time." Dkt. 104-2 at 3; Dkt. 104-3 at 3.

Not can Plaintiffs rely on an implied covenant theory to save their breach of contract claim. The implied covenant claim fails because "'Indiana law does not impose a generalized duty of good faith and fair dealing on every contract; the recognition of an implied covenant is generally

14

limited to employment contracts and insurance contracts.'" *Hess v. Biomet, Inc.*, No. 3:16-CV-208, 2017 U.S. Dist. LEXIS 22655, at *16 (N.D. Ind. Feb. 16, 2017) (quoting *Old Nat. Bank v. Kelly*, 31 N.E.3d 522, 531 (Ind. Ct. App. 2015)). The implied covenant claim is not a viable legal theory as a matter of law because the Credit Terms are not an employment contract or insurance contract. Moreover, the implied covenant claim fails because that theory cannot be used to contradict the express terms of the contract. *See Keystone Carbon Co. v. Black*, 599 N.E.2d 213, 216 (Ind. Ct. App. 1992) ("The existence of express terms in a valid contract precludes the substitution of and the implication in law of terms regarding the subject matter covered by the express terms of the contract. When the rights of parties are controlled by an express contract, recovery cannot be based on a theory implied in law. Implied covenants are not favored in Indiana, especially where they restrict the freedom to enter into contracts." ) (internal citation omitted). Because Nexo was given the right to do what it did by the express provisions of the contract, there can be no breach. The Credit Terms expressly gave Nexo the right to suspend XRP as a repayment option in response to the SEC Action against Ripple.

    **C.**     **The breach of contract claim based on XRP suspension fails as a matter of undisputed fact**

The breach of contract claim based on XRP suspension also fails as a matter of fact because Coleman III did not take out any credit lines until after Nexo had suspended XRP as a repayment option and disclosed that fact on its website. Dkt. 104-18 at 3, 17; Dkt. 104-25 at 7; Dkt. 104-9 at 2. Additionally, both Plaintiffs had other cryptocurrencies that they could have used to pay down their credit lines; they simply chose not to. Dkt. 104-17 at 12-15; Dkt. 104-5 at 13-14, 21-22; Dkt. 104-7 at 19-20.

D. **The breach of contract claim based on lack of notice of liquidation fails as a matter of undisputed fact**

The only contractual provision of the Credit Terms related to notice of liquidation is found in earlier versions of Section VI.2, which states: "If the LTV increases above the maximum permitted threshold, as indicated on the Nexo Platform, Nexo shall, after notifying you, liquidate the necessary amount of Collateral to rebalance your Nexo Crypto Credit." *See* Dkt. 104-2 at 4; Dkt. 104-3 at 4; Dkt. 104-12 at 4; Dkt. 104-14 at 4 (Credit Terms VI.2).[1]

The breach of contract claim based on lack of notice fails because the undisputed evidence shows that Coleman III received text and email notifications before his first and second liquidations. Dkt. 104-16 at 2-13. Additionally, Coleman IV admits in his RFA responses to receiving notice before both of his liquidations. Dkt. 104-19 at 17.

E. **The breach of contract claim based on improper liquidation fails as a matter of undisputed fact**

To the extent that Plaintiffs assert a breach of contact claim for improper liquidations, the undisputed testimony of Petar Marinov and Dr. Randall Valentine demonstrate that Plaintiffs' collateral was properly liquidated in cryptocurrency market crashes in May/June 2021 and May 2022 because Plaintiffs failed to maintain the required LTV ratio of 83.3% Dkt. 104-17 at 11; Dkt. 104-25 at 8, 11, 12, 13.

---

[1] The Credit Terms that applied to Coleman III's second liquidation in May 2022 contains an updated notice provision stating that Nexo shall liquidate "after having devoted significant efforts to notify you thereof in advance, if and to the extent possible under prevailing market conditions." Dkt. 104-13 at 4. There is no breach of either version of the notice provision because Coleman III received actual notice before both of his liquidations, and Nexo devoted significant efforts for both notifications.

F. **Statement of material facts not in dispute**

Pursuant to Local Rule 56-1, Nexo provides the following statement of material facts not in dispute that Nexo believes are dispositive of Plaintiffs' breach of contract claims:

| # | Material Fact | Supporting Evidence |
|---|---|---|
| 1 | Both Plaintiffs agreed to the Credit Terms when they signed up for their Nexo accounts. | Dkt. 11 (Second Amended Complaint) at 5; Dkt. 104-25 at 3-6. |
| 2 | Both Plaintiffs received notice from Nexo before the liquidations of their cryptocurrency collateral securing their credit lines. | Dkt. 104-25 at 8-12; Dkt. 104-16 at 2-13; Dkt. 104-19 at 17. |
| 3 | Nexo had a contractual right to suspend XRP as a repayment option for its credit lines. | Dkt. 104-3 at 3-4; Dkt. 104-12 at 3-5; Dkt. 104-13 at 3-5; Dkt. 104-14 at 3-4. |
| 4 | After suspending XRP as a repayment option, Nexo provided Plaintiffs with a variety of other options to pay off their credit lines, including U.S. Dollars and at least nine other cryptocurrencies. | Dkt. 104-9 at 2; Dkt. 104-10 at 2; Dkt. 104-25 at 7; Dkt. 104-22 at 81, 119 (Coleman III Dep. Tr. 81:19-22, 119:19-22). |
| 5 | Coleman III did not take out any credit lines until after Nexo had suspended XRP as a repayment option for credit lines. | Dkt. 104-18 at 3, 17; Dkt. 104-5 at 3. |
| 6 | Coleman III did not transfer any XRP to the Nexo platform until after Nexo had suspended XRP as a repayment option for credit lines. | Dkt. 104-18 at 3, 17; Dkt. 104-5 at 3. |

| 7 | Nexo provided notice to its customers that it was no longer accepting XRP as a repayment option for its credit lines. | Dkt. 104-9 at 2; Dkt. 104-10 at 2-5; Dkt. 104-25 at 7. |
|---|---|---|
| 8 | Nexo properly liquidated the cryptocurrency collateral in Plaintiffs' accounts because Plaintiffs breached their contractual obligation to maintain the required LTV ratio of 83.3% | Dkt. 104-17 at 11; Dkt. 104-25 at 8, 11, 12, 13. |
| 9 | Plaintiffs' liquidation losses were caused by the CLP, not the EIP. | Dkt. 104-25 at 12-13; Dkt. 104-20 at 11; Dkt. 104-5 at 13-14, 21-22; Dkt. 104-7 at 19-20. |

## CONCLUSION

For the foregoing reasons, Nexo respectfully requests that the Court grant the present motion for summary judgment and dismiss with prejudice Plaintiffs' breach of contract claims.

Dated:  January 16, 2026                    Respectfully submitted,

*/s/ Ian S. Shelton*
Ian S. Shelton
BAKER & MCKENZIE LLP
800 Capitol Street, Suite 2100
Houston, TX 77002
Phone: (713) 427-5029
Fax: (713) 427-5099
ian.shelton@bakermckenzie.com

*Attorneys for Defendant Nexo Capital Inc.*

## PROOF OF SERVICE

The undersigned hereby certifies that on January 16, 2026, the foregoing document and all supporting documents were filed with the Clerk of the Court using the Court's CM/ECF system. The undersigned also served a copy of the foregoing document and all supporting documents on pro se Plaintiffs via email on January 16, 2026, addressed as follows:

Elbert Coleman III, lobaalaw@email.com, elbertforgiveindustryllc@gmail.com

Elbert Coleman IV, elbertcoleman2041@gmail.com

 

                                             */s/ Ian S. Shelton*
                                             Ian S. Shelton