*EXHIBIT BBBB-1*

```
* * * * * * * * * * * * * * * * * * * * * * * * * * * *
                                                      *
IN THE MATTER OF:                                     *
                                                      *     CONSENT ORDER
                                                      *
NEXO CAPITAL INC.                                     *     No. CO-23-20236-S
                                                      *
                                                      *
("Respondent")                                        *
                                                      *
* * * * * * * * * * * * * * * * * * * * * * * * * * *
```

## I. PRELIMINARY STATEMENT

**WHEREAS,** the Banking Commissioner ("Commissioner") is charged with the administration of Chapter 672a of the General Statutes of Connecticut, the Connecticut Uniform Securities Act ("Act"), and Sections 36b-31-2 to 36b-31-33, inclusive, of the Regulations of Connecticut State Agencies promulgated under the Act ("Regulations");

**WHEREAS,** Respondent Nexo Capital Inc., the Nexo Group, Nexo Inc., Nexo Financial LLC, and their affiliates, successors, and assignees (individually and collectively, "Nexo") are financial services companies, and affiliates thereof. At all times pertinent hereto, Respondent Nexo Capital Inc. maintained its principal place of business in Grand Cayman, Cayman Islands;

**WHEREAS**, Respondent Nexo Capital Inc., the sole Respondent named in this Consent Order, has offered and sold interest-bearing digital asset accounts called Earn Interest Product ("EIP") accounts, which allow clients to earn interest on digital assets. Respondent Nexo Capital Inc. is not and has not been registered in any capacity under the Act;

**WHEREAS**, Antoni Trenchev ("Trenchev") is co-founder and Managing Partner of the Nexo Group and a director and manager of certain companies within the Nexo Group, including Nexo Inc. and Respondent;

**WHEREAS**, the North American Securities Administrators Association, Inc. ("NASAA") is a voluntary association whose membership consists of 67 state, provincial, and territorial securities administrators;

**WHEREAS**, state securities regulators, as part of a NASAA Working Group led by regulators from the states of Washington, California, Kentucky, New York, Oklahoma, Indiana, Maryland, South Carolina, Vermont, and Wisconsin (the "NASAA Working Group"), conducted an investigation into whether, among other things, the EIP involved the offer and sale of unregistered securities by Respondent to retail investors;

**WHEREAS**, Respondent, on behalf of itself and its affiliates, has advised the NASAA Working Group of its willingness to resolve the investigation globally with the fifty states, the District of Columbia, Puerto Rico and the U.S. Virgin Islands (collectively, the "53 Jurisdictions") in accordance with recommendations made by the NASAA Working Group as reflected in the terms of this Consent Order;

**WHEREAS**, on December 5, 2022, Respondent Nexo Capital, Inc. proactively announced that it was terminating the EIP in certain states and "phasing out" all of its products and services in the United States, including permanently ceasing to offer and sell the EIP to U.S. investors, and winding down the EIP for existing U.S. investors who continued to earn interest on funds held in the EIP prior to February 18, 2022;

**WHEREAS**, Respondent has represented that, as of the date this Consent Order is entered, Respondent has amended and updated its terms of service, and any other terms or conditions of its relationship with residents of the affected jurisdictions, including Connecticut, to reflect that residents of the affected jurisdictions are the title, beneficial, and legal owners of all fiat currency and digital assets held in their EIP accounts;

**WHEREAS**, pursuant to the multistate settlement, Respondent has agreed to pay up to a total of Twenty-Two Million Five Hundred Thousand dollars ($22,500,000) in settlement payments divided equally among the 50 states, the District of Columbia, Puerto Rico, and the U.S. Virgin Islands and paid to each of the 53 Jurisdictions that enter into a consent order in accordance with the terms of the multistate settlement negotiated by the NASAA Working Group;

**WHEREAS**, on January 19, 2023, in a parallel action, the United States Securities and Exchange Commission entered against Respondent Nexo Capital, Inc. an Order Instituting Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933, Making Findings, and Imposing a Cease-and-Desist Order (*Securities Act of 1933 Release No. 11149; Administrative Proceeding File No. 3-21281*) (the "SEC Order") based on the alleged sale of unregistered securities by Respondent Nexo Capital, Inc. The release accompanying the SEC Order indicated that Respondent Nexo Capital, Inc. agreed to pay a $22.5 million penalty to the SEC and acknowledged the $22.5 million multistate settlement negotiated by the NASAA Working Group;

**WHEREAS**, Section 36b-31(c) of the Act provides, in part, that: "To encourage uniform interpretation and administration of sections 36b-2 to 36b-33, inclusive, and effective securities regulation and enforcement, the commissioner may cooperate with the securities agencies or administrators of other states, Canadian provinces or territories . . . [and] any national or international organization of securities officials or agencies, and any governmental law enforcement or regulatory agency. The cooperation authorized by this subsection includes, but is not limited to, the following actions . . . (2) conducting joint . . . investigations; (3) sharing and exchanging information and documents subject to the restrictions of chapter 3; . . . and (5) executing joint agreements, memoranda of understanding and orders;"

**WHEREAS**, the Commissioner, acting pursuant to Sections 36b-31(c) and 36b-26 of the Act and through the Securities and Business Investments Division, conducted an investigation into the activities of

2

Respondent to determine whether it had violated any provision of the Act or any regulation or order under the Act;

**WHEREAS**, Section 36b-27(a) of the Act authorizes the Commissioner to order any person who has violated, is violating or is about to violate any provision of the Act or any regulation, rule or order adopted or issued under the Act to cease and desist from such violation, and Section 36b-27(d) of the Act authorizes the Commissioner to impose a fine against any person who has violated any provision of the Act or any regulation, rule or order adopted or issued under the Act;

**WHEREAS,** an administrative proceeding under Section 36b-27 of the Act would constitute a "contested case" within the meaning of Section 4-166(4) of the General Statutes of Connecticut;

**WHEREAS,** Section 4-177(c) of the General Statutes of Connecticut and Section 36a-1-55(a) of the Regulations of Connecticut State Agencies provide that a contested case may be resolved by consent order, unless precluded by law;

**WHEREAS,** Section 36b-31(a) of the Act provides, in relevant part, that "[t]he commissioner may from time to time make . . . such . . . orders as are necessary to carry out the provisions of sections 36b-2 to 36b-34, inclusive";

**WHEREAS,** Section 36b-31(b) of the Act provides, in relevant part, that "[n]o . . . order may be made . . . unless the commissioner finds that the action is necessary or appropriate in the public interest or for the protection of investors and consistent with the purposes fairly intended by the policy and provisions of sections 36b-2 to 36b-34, inclusive";

**WHEREAS**, solely for the purpose of terminating the multistate securities investigations and in settlement of the issues contained in this Consent Order, Respondent, through its execution of this Consent Order and without admitting or denying the findings of fact or conclusions of law contained in this Consent Order, consents to the entry of this Consent Order.  Notwithstanding the foregoing, Respondent will admit the findings of fact and conclusions of law for the purposes of exceptions to discharge in bankruptcy proceedings under any jurisdiction, including the proceedings set forth in Sections 523 and 1192 of the Bankruptcy Code, 11 U.S.C. §§ 523; 1192;

**WHEREAS**, Respondent admits the jurisdiction of the Commissioner, voluntarily consents to the entry of this Consent Order, and voluntarily waives the following rights:  (1) to be afforded notice and an opportunity for a hearing within the meaning of Sections 36b-27(a) and 36b-27(d)(2) of the Act and Section 4-177(a) of the General Statutes of Connecticut; (2) to present evidence and argument and to otherwise avail itself of Sections 36b-27(a) and 36b-27(d)(2) of the Act and Section 4-177c(a) of the General Statutes of Connecticut; (3) to present its position in a hearing in which it is represented by counsel; (4) to have a written record of the hearing made and a written decision issued by a hearing officer; and (5) to seek judicial review of, or otherwise challenge or contest the matters described herein, including the validity of this Consent Order;

**WHEREAS**, the Commissioner finds that the entry of this Consent Order is necessary or appropriate in the public interest and consistent with the purposes fairly intended by the policy and provisions of the Act;

**NOW THEREFORE**, the Commissioner hereby enters this Consent Order.

## II. FINDINGS OF FACT

1. Nexo Inc. ("Nexo Inc.") is a Cayman Islands corporation formed in 2018 which provides virtual currency-related financial services to retail and institutional borrowers in the United States, including trading, borrowing, and lending services. Nexo Inc. wholly owns Respondent Nexo Capital, Inc. Nexo Inc. is not registered to do business in Connecticut and is not registered with the Commissioner in any capacity.

2. Respondent Nexo Capital, Inc. is a Cayman Islands corporation formed in 2018 with its principal place of business in Grand Cayman, Cayman Islands. Respondent is not registered to do business in Connecticut and is not registered with the Commissioner in any capacity.

3. Nexo Financial LLC ("Nexo Financial") is a Delaware limited liability company formed in 2018 with its principal place of business in London, United Kingdom. Nexo Financial holds certain licenses, including money transmitter licenses and lending licenses in some states but is not registered with the Commissioner in any capacity.

4. Nexo Group comprises business entities organized primarily in European countries and territories, including but not limited to Nexo Inc., Respondent, and Nexo Financial LLC. Nexo Group is not registered to do business in Connecticut and is not registered with the Commissioner in any capacity.

5. Antoni Trenchev is a co-founder and Managing Partner of the Nexo Group and a director and manager of certain companies within the Nexo Group, including Respondent. Antoni Trenchev is responsible for supervising day-to-day business activities of the Nexo Group companies, including ensuring their compliance with applicable legislation, rules, and regulations. Antoni Trenchev is not registered in any capacity under the Act.

### *Prior Actions Initiated by the NASAA Working Group States*

6. On September 26, 2022, the State of Washington filed a statement of charges alleging that Respondent and its parent and director, Nexo Inc. and Antoni Trenchev, were offering and selling unregistered securities in the form of the EIP and were making untrue statements of material fact or omitting to state material facts necessary to make the statements made, in light of the circumstances in which they were made, not misleading. The State of Washington also alleged that Antoni Trenchev offered and sold securities while not being registered as a securities salesperson or broker-dealer.

7. On September 26, 2022, the State of Oklahoma filed an order to cease and desist alleging that Nexo Financial LLC, and its parent and affiliate, Nexo, Inc. and Respondent Nexo Capital, Inc., were offering and selling unregistered securities in the form of the EIP.

8. On September 26, 2022, the State of California filed a desist and refrain order alleging that Respondent and its parent and collective business group, Nexo Inc. and Nexo Group, were offering and selling unqualified securities in the form of the EIP.

9. On September 26, 2022, the State of Maryland filed a summary order to cease and desist and order to show cause alleging that Respondent and its parent and director, Nexo Inc. and Antoni Trenchev, were offering and selling unregistered securities in the form of the EIP, were transacting business as an unregistered broker-dealer or agent and, in this business,

employing an unregistered agent, making an untrue statement of a material fact or omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and engaging in dishonest or unethical practices in the securities or investment advisory business.

10. On September 26, 2022, the State of New York filed a civil complaint alleging that Respondent and its parent, Nexo Inc., were offering and selling unregistered securities and unregistered commodities in the form of the EIP and by facilitating the purchase and sale of virtual currencies on Nexo's virtual marketplace known as the "Exchange," and making materially false and misleading representations, statements, and omissions relating to the sale, purchase or exchange of securities or commodities.

11. On September 26, 2022, the State of Vermont filed an ex parte order to cease and desist alleging that Respondent and its parent and affiliate, Nexo Inc. and Nexo Financial LLC, were offering and selling unregistered securities in the form of the EIP.

12. On September 26, 2022, the State of Kentucky filed an emergency cease and desist order alleging that Respondent and its parent and collective business group, Nexo Inc. and Nexo Group, were offering and selling unregistered securities in the form of the EIP, and were making untrue statements of material fact or omitting to state material facts necessary in order to make those statements not misleading in light of the circumstances in which they were made.

13. On September 26, 2022, the State of South Carolina filed an order to cease and desist alleging that Respondent and its parent, Nexo Inc., were offering and selling unregistered securities in the form of the EIP, and were making untrue statements of a material fact or omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

14. On September 28, 2022, the State of Indiana filed an order to cease and desist alleging that Respondent and its parent, Nexo Inc., were offering and selling unregistered securities in the form of the EIP.

15. On November 3, 2022, the State of Wisconsin filed an order to cease and desist alleging that Respondent and its parent, Nexo Inc., were offering and selling unregistered securities in the form of the EIP.

### *The Offer and Sale of Securities Nationwide*

16. Between approximately June 17, 2020, and December 6, 2022 ("Offering Period"), Respondent, alone and/or through its affiliated entities, offered and sold its EIP accounts to new and/or existing Connecticut investors. The EIP enabled investors to passively earn interest by loaning certain digital assets ("Eligible Earn Assets") to Respondent and/or its affiliates. EIP investors had no part in selecting, monitoring, or reviewing the revenue-generating activities that Respondent and/or its affiliates utilized to earn this interest.

17. As of July 31, 2022, there were one thousand sixty nine (1,069) Connecticut EIP accounts earning interest with a total Connecticut EIP savings wallet value of fourteen million seven hundred seventy dollars ($14,770,000). Nationally, there were 93,318 EIP accounts earning interest with a total EIP savings wallet value of $800,260,000.

18. Respondent, alone and/or through its affiliates, promoted their financial services, including the EIP, to investors primarily through their website at http://www.nexo.io/ and their mobile Nexo app.  On the website, Respondent and/or its affiliates provided information about the EIP and a list of supported virtual currencies and their corresponding interest rates.  In addition, Respondent and/or its affiliates promoted the EIP on social media through various platforms including Twitter, Instagram, and YouTube.  Through the website, blog, and social media accounts, Respondent, alone and/or through its affiliates, represented interest rates on these EIP accounts of up to 36%, significantly higher than the rates offered for short-term, investment grade, fixed-income securities or for bank savings accounts.

19. In offering its EIP, Respondent, alone and/or through its affiliates, failed to disclose material information about the investment, including, but not limited to, Respondent's EIP interest generation deployment activities, Respondent's legal and regulatory compliance, and the limitations of financial representations made by Respondent, alone and/or through its affiliates..

20. Respondent, alone and/or through its affiliates, allowed, with certain limitations, anyone either 18 years of age or older, depending on the jurisdiction, to open an EIP account and access Nexo wallet services.  When opening a Nexo account, an investor would go through several user identity-verification protocols, including, at a minimum, the provision of an investor's legal name, date of birth, and address.  An investor would then transfer fiat currency (EUR, GBP, and USD) from a bank account to their Nexo account.  Investors could also add cryptocurrency to their Nexo wallet by transferring assets from another crypto exchange or wallet.

### *Nexo's Earn Interest Product*

21. Nexo ceased offering its EIP to new investors in Connecticut after August 2, 2021, after the multistate regulatory inquiry into Nexo's business.  From approximately August 2, 2021, until approximately February 19, 2022, existing Connecticut investors could deposit additional fiat currency and cryptocurrency into their existing EIP accounts and could continue to earn interest on their invested EIP Eligible Earn Assets.  Thereafter on February 19, 2022, Respondent, alone and/or through its affiliates, disallowed any US investors who had not yet opened a Nexo Account from opening an EIP savings wallet.  Also on February 19, 2022, Respondent, alone and/or through its affiliates, disallowed any existing US investors from adding additional assets into their existing EIP savings wallets.

22. In Nexo's EIP, an investor agreed to invest their Eligible Earn Assets with Nexo, in exchange for passively earning interest that was deposited into the investor's EIP savings wallet.  EIP investors began accruing interest 24 hours after investing Eligible Earn Assets with Nexo.

23. Nexo offered their EIP in the form of either a Flex EIP Savings Wallet Term ("Flex Term Investment") or a Fixed EIP Savings Wallet Term ("Fixed Term Investment").  Interest from an investor's Eligible Earn Assets was credited to an investor's EIP savings wallet either at the expiration of the Fixed Term Investment, or daily for a Flex Term Investment.

24. For a Flex Term Investment, there was no required "holding" time for an investor to lend their Eligible Earn Assets, and these investors were able to withdraw their Eligible Earn Assets at any time subject to the terms and conditions of a Nexo wallet.

25. For a Fixed Term Investment, investors were unable to withdraw their Eligible Earn Assets

for the duration of a defined term. When investing in a Fixed Term Investment, an investor could elect to utilize Nexo's "automatic renewal" feature to rollover their investment at the end of the defined term.

26. The interest rate Nexo paid an investor on their invested Eligible Earn Assets was determined by several factors, including the length of the Eligible Earn Assets loan, the type of cryptocurrency loaned, and whether the investor had a Flex Term Investment or a Fixed Term Investment. Generally, the longer that an investor agreed to maintain their Eligible Earn Assets with Nexo, the higher the rate of return.

27. After February 19, 2022, while Nexo disallowed additional deposits into existing EIP savings wallets, Nexo continued to allow existing investors enrolled in a Fixed Term Investment to rollover their EIP Eligible Earn Assets into a new Fixed Term Investment.

28. In actions from September through November 2022, the NASAA Working Group concluded that Nexo's offering an investor the option to automatically renew their Fixed Term Investment for another identical term, along with the investor's decision to enroll, constituted an offer and sale of a security.

29. On December 6, 2022, Nexo began winding down its U.S. sales of EIP, starting with ceasing the offering of EIP to investors within jurisdictions represented by the NASAA Working Group.

### *Deployment and Income-Generating Activities*

30. In accordance with the EIP terms and conditions, the EIP savings wallet interest rate was subject to revision from time to time, at Nexo's sole and absolute discretion. Included in the EIP terms and conditions, investors were required to acknowledge that they: "*…understand and agree that we [Nexo] might convert, pledge, re-pledge, hypothecate, rehypothecate, sell, lend, or otherwise transfer, dispose of or use any amount of any Digital Assets in regard to which you use the Nexo Earn Interest Product, separately or together with other property, and for any period of time, and without retaining in our [Nexo's] possession and/or control for delivery a like amount thereof or any other assets, at our [Nexo's] sole and absolute discretion*."

31. As such, any profit earned by Nexo investors was earned solely through the efforts of Nexo with means determined solely by Nexo.

32. Nexo grouped and deployed investor Eligible Earn Assets with other investors' Eligible Earn Assets and similar, Nexo-owned assets (e.g., Eligible Earn Bitcoin Assets with other Nexo-owned Bitcoin assets). To earn income to pay interest to EIP investors, Nexo engaged in deployment activities including the staking, lending, arbitrage, and provision of liquidity on certain decentralized finance platforms, in addition to the lending of aggregated investor Eligible Earn Assets to retail and institutional borrowers.

### *Nexo's Representations Regarding the Offer and Sale of EIPs*

33. In offering the EIP to Connecticut investors, Nexo failed to disclose material information related to Nexo's EIP interest generation, Nexo's regulatory compliance, and Nexo's financial representations.

34. Nexo failed to disclose its lending agreements or the terms contained therein to EIP investors, and as such, Nexo's EIP investors were not provided with information as to whom Nexo's institutional lending partners were, how long the term loan was for, or whether these loans were over-collateralized, despite Nexo's assurances that all loans were provided in an over-collateralized fashion. Consequently, Nexo EIP investors could not adequately evaluate the risk associated with their participation in the EIP prior to investing their Eligible Earn Assets with Nexo.

35. Nexo's website represented to EIP investors that "Nexo has gone the extra mile in ensuring compliance with the applicable regulatory frameworks. Together with our top-tier legal counsel and engaging proactively with the regulatory decision-makers we ensure the sustainability of our products for years to come."

36. Concurrently, Nexo made the following statements on its website: "The Nexo Group has legal entities in various locations throughout the world…and is in compliance with all applicable global and local regulations…rest assured that Nexo is compliant everywhere it provides services and retains top-tier legal counsels in the jurisdictions of its operation." Further, within the footer of Nexo's website, Nexo displayed the phrase "Licensed & Regulated Digital Assets Institution."

37. Through these representations, Nexo gave investors the impression that their investments were less risky. On or about June 30, 2021, Nexo Co-Founder Trenchev appeared on a Yahoo Finance Live broadcast titled, "Crypto-focused banking: Nexo Co-Founder discusses his company's growth and business model." On this broadcast, Trenchev stated that he "would argue, from a financial perspective… that [Nexo is] safer, especially for the larger clients, than your average bank." On July 1, 2021, Nexo re-posted this broadcast to its YouTube channel, and re-named it, "Nexo is Safer than your Average Bank…"

38. Respondent Nexo Capital, Inc. was the entity that operated Nexo's website and conducted the EIP offering. This was not disclosed on the website; instead, the website often used the name "Nexo" without further clarification. Of the licenses and registrations identified on Nexo's website, Respondent Nexo Capital, Inc. only held two—a money service business registration license in Canada and a registration as a foreign company in Australia. Notably, none of the Nexo respondents hold securities licenses in Connecticut.

39. As such, Nexo: 1) failed to specify that Respondent Nexo Capital, Inc. was the operator of the website and provider of the services offered therein; 2) listed the licenses of one or more entities that were not actually doing business in the relevant jurisdictions and that were not conducting the business offered and provided through the website on which the licenses and registrations were listed; and 3) made the false statement that the Nexo Group was in compliance with "all applicable … regulations."

40. Nexo represented on its website and through the Nexo YouTube video, "How to Earn Crypto Interest," that an investor's Eligible Earn Assets were secured at all times by Nexo's asset-backed portfolio of over-collateralized loans. Nexo also stated that the platform loaned to individuals and institutions only on an over-collateralized basis, and that this was how Nexo kept EIP interest rates consistent over time and could "basically eliminate counter party risk."

41. Further, on or about June 10, 2021, Nexo advertised a forthcoming "real-time audit" of

8

Nexo's custodial assets by Armanino LLP[1], which they represented would show that the company's assets exceeded liabilities. In a Daily Hodl article published on June 10, 2021, Antoni Trenchev stated, "We are happy to have opened our books to allow Armanino…to verify that our company's assets exceed liabilities at all times and demonstrate how seriously we treat Nexo's commitments to our customers."

42. In a Nexo blog post published on September 23, 2021, Nexo presented the Armanino report, which purported to offer a "real-time audit of Nexo's custodial assets, showing the company's assets always exceed liabilities." This Armanino report was updated daily and Nexo claimed that it provided the following assurances: 1) "Fully Backed: Your holdings on Nexo's platform are backed by assets by more than 100%"; 2) "Properly Managed: Third-party assurance that your funds on the Nexo platform are properly managed and accounted for"; and 3) "Always Available: 24/7 proof of Nexo's ability to meet all liabilities owed to you at any time." This Armanino report is publicly available online at https://real-time-attest.trustexplorer.io/nexo.

43. More recently, in response to a competing cryptocurrency firm freezing customer withdrawals on June 12, 2022, Nexo's Twitter account tweeted: "All Nexo products are operating normally – Borrow, Earn, Exchange…Nexo is the first and only blockchain finance company to have a real-time audit of its custodial assets, showing that the company's assets exceed its liabilities at all times which attests to Nexo's liquidity and ability to meet all of its obligations…Nexo is in a solid liquidity and equity position to readily acquire any remaining qualifying assets of Celsius, mainly their collateralized loan portfolio…."

44. Nexo provided a link to their real-time attestation Armanino report within the body of this tweet.

45. Nexo's provision of the Armanino report in conjunction with these claims of financial stability gave the appearance that the Armanino report could support Nexo's claims of financial stability in a turbulent market.

46. Despite representations by Nexo, the data and figures set forth in the Armanino report contained several material shortcomings, as described in the report's Agreed Upon Procedures, that limited the report's ability to provide assurances of Nexo's financial stability. These limitations included 1) a failure to identify non-Customer Liabilities; 2) a failure to identify whether Customer Liabilities included the collateral that Nexo held for over-collateralized retail loans; 3) a failure to identify the liquidity of Nexo's assets; 4) a failure to identify doubtful loan accounts (e.g. a distressed or non-paying borrower accounts); and 5) a failure to identify whether Nexo's deposit liabilities were secured or otherwise collateralized by Nexo's assets.

47. As such, this report was of limited value and could not be used to support Nexo's claims that "Nexo's assets exceed their liabilities by more than 100%".

### *Failure to Comply With Registration Requirements*

48. During the Offering Period, Nexo's offer and sale of the EIP were not the subject of a claim of exemption or covered security status under Section 36b-21 of the Act.

---

[1] Armanino LLP is a Public Company Accounting Oversight Board ("PCOAB") – certified auditor, accounting and consulting firm in the US.

49. During the Offering Period, Nexo offered and sold securities in Connecticut that were not registered as required by Section 36b-16 of the Act.

## IV.  CONCLUSIONS OF LAW

The Commissioner finds that sufficient grounds would exist to initiate enforcement proceedings against Respondent under Section 36b-27 of the Act, based on the following, all of which are more fully described above, after granting Respondent an opportunity for a hearing:

1. The offer and/or sale of Nexo's Earn Interest Product described above constitutes the offer and/or sale of a security as defined in Section 36b-3(19) of the Act.

2. During the Offering Period, Nexo offered and sold unregistered securities in Connecticut in violation of Section 36b-16 of the Act.

3. The foregoing violation of Section 36b-16 of the Act constitutes a basis for the imposition of an administrative fine against Respondent pursuant to Section 36b-27(d) of the Act and the entry of a cease and desist order against Respondent pursuant to Section 36b-27(a) of the Act.

4. The entry of this Consent Order is necessary or appropriate in the public interest and consistent with the purposes fairly intended by the policy and provisions of the Act.

## V.  REPRESENTATIONS BY RESPONDENT

1. Nexo attests that it has adequate funds and resources to (i) facilitate, honor, and fulfill withdrawals of all assets belonging to residents of the 53 Jurisdictions, and (ii) pay the agreed-upon settlement payments to the 53 Jurisdictions. Nexo further attests that it can perform the foregoing actions and still be solvent and without material impact to its ongoing operation.

2. Respondent Nexo Capital Inc. agrees that for any EIP accounts, savings wallets, and non-collateral wallets held by residents of the 53 Jurisdictions after April 1, 2023 (collectively, "Legacy Accounts"), (i) Legacy Account holders are the title, beneficial, and legal owners of all fiat currency and digital assets held in their Legacy Accounts; (ii) Nexo will assist customers beyond April 1, 2023, with any withdrawals/transfers; and (iii) Nexo will implement the following:  (a) US Legacy Account assets shall be segregated from other assets under the management and control of Nexo.  (b) By April 1, 2023, all digital assets held in Legacy Accounts shall be free of counterparty obligations, and after that date Nexo will not convert, pledge, rehypothecate, sell, lend, stake or otherwise transfer, dispose of or use any amount of digital assets held in Legacy Accounts.  (c) No interest will accrue in or otherwise be applied to Legacy Accounts.  (d) Nexo will continue to allow Legacy Account holders to have access to their Legacy Accounts for the sole purpose of making withdrawals by any such Legacy Account holder or their representative. Withdrawals may be in the form of transfers of digital assets to personal wallets or by selling the digital assets and transferring the fiat proceeds, at the discretion of the Legacy Account holder.

3. Respondent Nexo Capital Inc. unconditionally guarantees payment of the administrative fine in the amount of $424,528.30 imposed by the Commissioner and more fully described below.

4. Respondent Nexo Capital Inc. agrees that it shall not claim, assert, or apply for a tax deduction or tax credit with regard to any state, federal, or local tax for any administrative fine that Respondent Nexo Capital Inc. shall pay pursuant to this Consent Order.

## VI.  CONSENT ORDER

On the basis of the Findings of Fact, Conclusions of Law, and the representations and consent of the Respondent to the entry of this Consent Order,

**IT IS HEREBY ORDERED THAT:**

1. Respondent, its representatives, agents, employees, affiliates, assigns, subsidiaries, and successors in interest shall **CEASE AND DESIST** from engaging, directly or indirectly, in conduct constituting or which would constitute a violation of the Act or any regulation or order under the Act, including, without limitation, (a) offering or selling to any new investors in Connecticut the EIP or any security absent compliance with Section 36b-16 of the Act; and (b) accepting further investments or funds in the EIP by current Connecticut investors absent compliance with Section 36b-16 of the Act.

2. Respondent, its representatives, agents, employees, affiliates, assigns, subsidiaries and successors in interest (a) shall not intentionally provide interest or other returns on any existing Connecticut investors' EIP accounts until such time as compliance is achieved with Section 36b-16 of the Act; and (b) shall diligently endeavor to ensure that interest payments are not provided to residents of Connecticut after April 1, 2023.

3. Respondent, on behalf of itself and its affiliates, shall require verification of the identity of all new account holders to ensure that it does not provide services to Connecticut persons, and shall implement IP-based geo-blocking restricting access by prospective new account holders from Connecticut to Nexo's app, websites, and services.

4. Respondent shall pay to the "Treasurer, State of Connecticut", by certified bank check or by Automated Clearing House (ACH) electronic funds transfer, the sum of four hundred twenty four thousand five hundred twenty eight and 30/100 dollars ($424,528.30) as an administrative fine. Payment shall be made in the following installments.  If Respondent fails to make any payment by the date agreed and/or in the amount agreed according to the schedule set forth below, all outstanding payments under this Consent Order, minus any payments made, shall become due and payable immediately at the discretion of the Commissioner:

    a. $141,509.44 immediately upon the entry of this Consent Order;
    b. $94,339.62 no later than ninety (90) days following the entry of this Consent Order;
    c. $94,339.62 no later than one hundred eighty days following the entry of this Consent Order; and
    d. $94,339.62 no later than two hundred seventy (270) days following the entry of this Consent Order.

5. If any state securities regulator determines not to accept the settlement offer of Respondent reflected herein, the monetary payments to Connecticut hereunder shall not be affected, and Respondent shall not be relieved of any of the non-monetary provisions of this Consent Order.

6. This Order concludes the securities investigation by the Commissioner with respect to Nexo's Earn Interest Product and resolves any other securities action the Commissioner could commence against Nexo and its affiliates under the Act concerning the Findings of Fact and Conclusions of Law, including those relating to the offer and sale of the EIP without registration under Section 36b-16 of the Act; provided, however, that excluded from and not covered by this paragraph are any claims by the Commissioner arising from or relating to enforcement of the terms and conditions of this Consent Order.

7. This Consent Order shall be binding upon Nexo, its parent and affiliates, and their respective successors and assigns with respect to the provisions above and all future obligations, responsibilities, undertakings, commitments, limitations, restrictions, events, and conditions.

8. This Consent Order is entered into solely for the purpose of resolving the referenced multistate securities investigation with respect to the EIP and is not intended to be used for any other purpose. Other than the obligations and provisions set forth herein, this Consent Order does not limit or create liability for Nexo nor limit or create defenses for Nexo to any claims, responsibilities, undertakings, commitments, limitations, restrictions, events, and conditions.

9. This Consent Order is not intended to subject any Covered Person to any disqualifications under the laws of the United States, any state, the District of Columbia, Puerto Rico, or the U.S. Virgin Islands, or under the rules or regulations of any securities or commodities regulator or self-regulatory organization, including, without limitation, any disqualification from relying upon the state or federal registration exemptions or safe harbor provisions. "Covered Persons" means Nexo Capital, its parent, or any of its affiliates and their current or former officers, directors, employees, or other persons that could otherwise be disqualified as a result of this Consent Order.

**NOW THEREFORE,** the Commissioner enters the following:

1. The Findings of Fact, Conclusions of Law and Consent Order set forth above, be and are hereby entered;

2. Entry of this Consent Order by the Commissioner is without prejudice to the right of the Commissioner to take enforcement action against Respondent based upon a violation of this Consent Order or the basis for its entry if the Commissioner determines that compliance with the terms herein is not being observed; and

3. This Consent Order shall become final when entered.

So ordered at Hartford, Connecticut

this 17th day of March 2023.    _____/s/_____
                                                      Jorge L. Perez
                                                      Banking Commissioner

## CONSENT TO ENTRY OF ORDER

Nexo Capital, Inc., on behalf of itself and the Nexo Group, Nexo Inc., Nexo Financial LLC and Antoni Trenchev, states that it has read the foregoing Consent Order; that it knows and fully understands its contents; that it agrees freely and without threat or coercion of any kind to comply with the terms and conditions stated herein; that no promise of any kind or nature whatsoever was made to it to induce it to consent to this Consent Order; and that it consents to the entry of this Consent Order.

Antoni Trenchev represents that he is Managing Director of Nexo Capital Inc. and that, as such, has been authorized by Nexo Capital Inc. to enter into this Consent Order for and on behalf of Nexo Capital Inc.

Nexo Capital, Inc.

By: _____/s/_____
Antoni Trenchev
Managing Director

Date: March 16, 2023_____

Approved as to form by:

_____/s/_____
Schulte Roth & Zabel LLP

Date: March 16, 2023_____